## Case No. 3,918.

DIMPFEL v. OHIO & M. RY. CO. et al.

[9 Biss. 127; 8 Reporter, 641; 12 Chi. Leg. News, 50.][1]

Circuit Court, S. D. Illinois. Sept., 1879.[2]

CONSOLIDATION OF COMPANIES — ULTRA VIRES — INNOCENT BONDHOLDERS—ESTOPPEL—LACHES.

1. In view of the legislation in Illinois great liberality should be exercised in regard to contracts for consolidation between different railroad companies. By the general language of the statutes relating to the union and consolidation of different lines of road, the means by which the result is to be or has been obtained, have not been clearly designated, but that has been left to be adjusted by contracts between the parties.

[Cited in Hervey v. Illinois Midland Ry. Co.. 28 Fed. 173; Union Trust Co. v. Illinois Midland R. Co., 117 U. S. 963, 6 Sup. Ct. 809.]

---

[a] [Reported by John Gallison, Esq.]

[1] [Reported by Josiah H. Bissell. Esq., and here reprinted by permission. 8 Reporter. 641, contains only a partial report.]

[2] [Affirmed in 110 U. S. 209, 3 Sup. Ct. 573.]

2. Where a corporation has acted under a contract and received the benefits arising under it, it is not competent for it to deny its validity as being "ultra vires."

3. After the lapse of several years from the time of the contracts of consolidation, and a mortgage having been made, bonds issued, and sold to bona fide purchasers on the faith of such contracts, it is not competent for the stockholders any more than for the company itself to question the authority under which the contracts and mortgage were executed.

[Cited in Moulton v. Chafee, 22 Fed. 27.]

[See note at end of case.]

[This was a bill in equity by Frederick P. Dimpfel against the Ohio & Mississippi Railway Company.]

Chas. W. Hassler and Perry Belmont, for complainant.

Henry Crawford and Perry H. Smith, Jr., for demurrants.

DRUMMOND, Circuit Judge. This is a bill filed by the plaintiff, as a stockholder of the Ohio and Mississippi Railway Company, on behalf of himself and such other stockholders as might join him in the bill (no one of whom, however, has so done), asking the court to declare a certain contract made by the company, and by which it acquired a portion of its railway called "The Springfield Division," and the bonds that were issued under a mortgage given by the company upon that division, null and void. To the bill a demurrer has been put in by some of the defendants, claiming under the contract and mortgage, and the question in the case is, whether the bill is maintainable in equity, and whether the contract and mortgage referred to were invalid as being "ultra vires." In 1851 an act was passed by the legislature of Illinois incorporating the Ohio and Mississippi Railway Company, the object of which was the construction of a railroad from Illinoistown, opposite St. Louis, to Vincennes, in Indiana. This company mortgaged its road to secure certain bonds, and a foreclosure took place and the road was sold; and under the sale, the Ohio and Mississippi Railway Company has become the representative and owner of the rights and equities of the original company. There were also various acts and amendments thereto, from time to time passed by the legislatures of Indiana and Ohio, for the construction of a railroad from Vincennes to Cincinnati; and by virtue of certain laws of Illinois, Indiana and Ohio, a consolidated company was created for the construction and operation of a railroad from Illinoistown to Cincinnati.

Under the original charter, the Ohio and Mississippi Railway Company had power to unite its railroad with any other railroad then, or thereafter to be constructed, either in Illinois or Indiana, and was authorized to execute all such contracts as were necessary to secure that object. By general laws of the state of Illinois, railroad corporations were authorized to consolidate their property and stock with domestic or foreign connecting companies, and to make contracts with railroad companies in other states to lease and operate their roads.

At the time of the acquisition of the Springfield Division, it was called "The Springfield and Illinois Southeastern Railroad Company," and it had been constructed and operated under a special act, as well as under the general laws of the state applicable to such companies, and it had been sold in foreclosure proceedings, and had been acquired by parties who had made the transfer to the Ohio and Mississippi Railway Company. This division of the road was then considered a valuable auxiliary of the Ohio and Mississippi Railway Company, and this, it is to be presumed, was the cause of the purchase which was made by the latter.

It is to be observed, that in view of the legislation of the state of Illinois upon this subject, great liberality should be exercised as to the contract in controversy in this case. Both by the legislation of the state, and by the construction of the same by its highest court, great encouragement has been given to the union of lines of railroad for the purpose of having them operated under some general management; the result of which has been the consolidation of many lines of road which were originally separate and distinct, but which are now operated under a uniform system. For example, nothing is more common now than the union of different lines of railroad by means of leases of one to the other, the authority for which is given, not so much under particular, as under general, laws of the state. It should be further observed, that in authorizing, by the general language which has been referred to in the legislation of this state, the union and consolidation of different lines of road, the means by which the result is to be, or has been, obtained, have not been clearly designated—but that has been left to be adjusted by contracts mutually executed between the parties.

There can be no doubt, I think, that it was competent for the Ohio and Mississippi Railway Company, under the laws of this state, to acquire the right of operating the Springfield Division, and whether the operation of the road was under the special act creating the Springfield and Illinois Southeastern Railroad Company, or under that which authorized the original and consolidated railway between Illinoistown and Vincennes, may not be very material in this case; neither can it be material whether this result was accomplished by virtue of a special contract of lease or otherwise, made with the Springfield and Illinois Southeastern Company or by virtue of a contract of purchase of that railroad.

Again, it must be borne in mind that the courts in recent times have been extremely

liberal in the construction of powers of railroad corporations to accomplish the general scope and objects of their creation, and that the question of ultra vires has not been, of late years, construed with that strictness that existed in former times; so that in view of these and other considerations that might be mentioned, I think it is a fair inference from the legislation on the subject, and the decisions of the courts, as well those of Illinois, as of the supreme court of the United States, that the contract by which the Springfield Division was purchased by the Ohio and Mississippi Railway Company, could not be considered as ultra vires, but was, on the contrary, a valid contract, and this independent of the legislation of the state of Indiana, by which in great part, this consolidated line of railroad running through the three states has been constructed and operated.

Again, one of the principles which now seems to be established by the adjudication of the courts as to powers of corporations, is that where a corporation has acted under a contract and received the benefits arising from it, it is not competent for it to deny its validity as being ultra vires. Under the contract made in this case, and from the money which was raised from the bonds that were issued on the Springfield Division, the Ohio and Mississippi Railway Company has received benefits, in which the whole consolidated company has participated.

The contract of purchase was made by the Ohio and Mississippi Railway Company in January, 1875. From that time up to the date of filing the bill in this case, the Springfield Division was operated as an integral part of the Ohio and Mississippi Railway Company, and in fact was merged in the consolidated company. This was an act public in its character, and must be presumed to have been known to all the stockholders of the Ohio and Mississippi Railway Company, and, so far as we know, no objection was interposed to their action until the filing of the bill in this case, on the 12th of September, 1878. Nearly four years therefore had passed since the acquisition of the Springfield Division, and its continued operation as a part of the consolidated company, before objection was made by any stockholder. During that time the relations of the various parties became changed in consequence of this action of the railway company. The mortgage had been made, and bonds issued. They had passed into the hands of bona fide purchasers on the faith of the contracts made, and which had been enforced without objection for several years. It would seem that if there was any serious question as to the power of the railway company to make this contract, execute this mortgage and issue these bonds, it ought to have been made at an earlier day, and that it is not competent now, either for the railway company, or for its stockholders, to object that what was done was beyond the power of the company.

It is impossible, in the nature of things, to place all parties as they were before this contract and mortgage were executed, and that consideration has always had great weight in the decision of questions of this kind.

So that on the whole my opinion is: In the first place, that the railway company had the right to acquire the Springfield Division, and to execute the mortgage and issue the bonds referred to, by virtue of the legislation of the state of Illinois; and in the second place, even if the right did not clearly exist by virtue of the laws of Illinois, that after the lapse of so long a time, and after so many rights and equities have been acquired by different parties under the action of the railway company, it is not competent for the plaintiff, or the other stockholders of the Ohio and Mississippi Railway Company, any more than for the company itself to question the authority under which the contract and mortgage were executed. The only power that could do that would be the state itself. The demurrer must therefore be sustained.

[NOTE. Complainant having appealed to the supreme court, the decree of dismissal was there affirmed for want of equity in the bill. The ground stated by that court (per Mr. Justice Field) was that, even assuming that complainant was a stockholder at the time of the transactions in question, his omission to object to the purchase of the road or the issuance of the bonds, and his failure to seek relief through the officers and directors of the corporation itself, was such acquiescence as would prevent him from obtaining any relief in equity. See Dimpfell v. Ohio & M. Ry. Co., 110 U. S. 209, 3 Sup. Ct. 573.]